IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT KLEIN, | ) |
| Plaintiff, | ) Case No. 20-cv-4601 |
| v. | ) Judge Robert M. Dow, Jr. |
| KESHET: JEWISH PARENTS OF CHILDREN WITH SPECIAL NEEDS and J. CHRISTOPHER RABIN, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

After being fired from his position as Director of External Affairs, Scott "Shalom" Klein ("Plaintiff") brought this complaint [1] against his former employer, Keshet: Jewish Parents of Children with Special Needs ("Keshet"), and the Chair of its Board of Directors, J. Christopher Rabin ("Defendant"). Defendant Rabin moved to dismiss the claim against him [18]. For the reasons below, Defendant's motion [18] is denied. Counsel are directed to file a joint status report no later than August 9, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

**I.     Background**[1]

Keshet is a nonprofit service organization that provides programs and consultations to help children and adults with intellectual challenges. [1, at ¶ 11]. Plaintiff has an extensive volunteer history with Keshet, including serving as the Chair of the Board of Directors beginning in August

---

[1] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

2017. [*Id.*, at ¶¶ 30, 33]. In addition to his work with Keshet, Plaintiff serves in the military. Specifically, he enlisted in the United States Army in December 2018 and was commissioned as a Lieutenant in August 2019. [*Id.*, at ¶¶ 57–58]. He served active duty through February 10, 2020, and since then has served as a Military Police Officer with a reserve unit in Arlington Heights, Illinois. [*Id.*, at ¶ 61]. His Army Reserve commitments involve reporting to his unit in Arlington Heights one weekend per month for training and drills and participating in an annual two-week training course. [*Id.*, at ¶ 62].

During this time, Keshet's CEO Abbey Weisberg offered Plaintiff a job as Director of External Affairs at Keshet, which Plaintiff accepted. [*Id.*, at ¶ 68]. Plaintiff's initial start date was in November 2019, but it was delayed because of his active-duty service that extended through February 2020. [*Id.*, at ¶ 71]. Plaintiff began as Director of External Affairs on February 17, 2020. [*Id.*, at ¶ 73]. Before he began, he resigned from his position as Chair of the Board. [*Id.*, at ¶ 72]. Defendant replaced Plaintiff as Board Chair. [*Id.*, at ¶ 81]. Even before he began, Plaintiff and his wife "repeatedly faced intensive questioning about [his] military service and obligations" from Defendant and other members of Keshet leadership. [*Id.*, at ¶ 76–83].

In April 2020, the Board of Directors terminated Weisberg as CEO and named Jennifer Phillips as Acting CEO. [*Id.*, at ¶ 84]. A few hours after Phillips' appointment, Phillips and Michelle Ebner, the CFO, informed Plaintiff that he was terminated. [*Id.*, at ¶ 84–85]. Ebner confirmed his termination in a letter that same day. [*Id.*, at ¶ 87]. No one at Keshet provided Plaintiff a reason for his termination, and prior to his termination Plaintiff received only positive feedback about his work. [*Id.*, at ¶¶ 88, 96–98]. Three days after his termination, Defendant Rabin sent Klein a text message that read "Be professional and move on. I'm sure you would have learned some ethical principles in the army. Or was that all for your resume?" [*Id.*, at ¶ 101].

After his termination, Plaintiff filed this suit against Keshet and Defendant Rabin, alleging that they violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311. Defendant Rabin moved to dismiss the claim against him [18].

## II.     Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

## III.    Analysis

USERRA provides that a member of "a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311. USERRA forbids discrimination by "employers," and it defines employer as:

> [A]ny person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including—
>
> (i) a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities;
> (ii) the Federal Government;
> (iii) a State;

>(iv) any successor in interest to a person, institution, organization, or other entity referred to in this subparagraph; and
>
>(v) a person, institution, organization, or other entity that has denied initial employment in violation of section 4311.

38 U.S.C. § 4303(4)(A). Defendant argues that Plaintiff cannot state a USERRA claim against him because Defendant lacked "final decision-making power regarding matters such as hiring or disciplinary practices." [18, at 5]. Plaintiff responds that Defendant relies on too narrow a definition of employer, and he asserts that an individual can be an employer if they have input or influence over employment decisions. [21, at ¶ 4]. Which definition applies is dispositive here as the complaint does not allege that Defendant had absolute or final authority over employment decisions regarding Plaintiff. [See 1, at ¶ 68 (explaining that Keshet's CEO offered Plaintiff his position), ¶¶ 84, 87 (explaining that the CEO and CFO terminated Plaintiff).] However, the complaint does allege that Defendant had influence over Plaintiff's termination. Defendant was Chair of the Board, and the Board terminated Weisberg as CEO. [1, at ¶¶ 81, 85]. Within hours of being appointed, Phillips, the new Acting CEO, terminated Plaintiff's employment. [*Id.*, at ¶¶ 84–85]. It is a more than plausible inference that Phillips did not come to an independent conclusion to terminate Plaintiff's employment within that timeframe and that instead she terminated Plaintiff's employment because the Board—and Defendant, as its Chair—directed her to do so.

There is a paucity of circuit law on this issue, and district courts are split on whether USERRA embraces Defendant's narrow definition of "employer" or Plaintiffs' broader one. Compare, *e.g.*, *Carter v. Siemens Bus. Servs., LLC*, 2010 WL 3522949, at *9 (N.D. Ill. Sept. 2, 2010) (finding that an individual who "influenced the company's decision to terminate" the plaintiff's employment qualified as an employer under USERRA), with *Coulson v. Town of Kearny*, 2010 WL 331347, at *7 (D.N.J. Jan. 19, 2010) (dismissing a USERRA complaint against

4

an individual because the complaint did not allege that the individual "had the power to hire or fire" the plaintiffs). The Court is inclined to embrace the broader definition of employer, particularly in light of the Seventh Circuit's recent opinion in *White v. United Airlines, Inc.*, 987 F.3d 616 (7th Cir. 2021). There, the court of appeals considered whether a parent company could be liable as an employer based on violations resulting from a collective bargaining agreement entered into by a subsidiary. *Id.* at 625–27. Although the facts are not directly analogous, the court's reasoning supports denying Defendant's motion here. In *White*, the plaintiff argued that he alleged that the parent company had "at least *some* control over employment opportunities" at the subsidiary. *Id.* at 626. The court acknowledged that it was "a close call," but it concluded that, "for the present purposes" the plaintiff had "alleged enough to keep" the parent company in the case at the motion-to-dismiss stage because the plaintiff had alleged "some measure of control." *Id.* at 626–27.

In support of its narrower definition, Defendant relies primarily on *McDaniel v. Loyola University Medical Center*, 2014 WL 4269126, (N.D. Ill. Aug. 28, 2014), and *Bello v. Village of Skokie*, 151 F. Supp. 3d 849 (N.D. Ill. 2015), but neither case requires a different conclusion here. For one thing, both cases were issued before the Seventh Circuit's decision in *White*. For another, the facts of these cases differ from the facts here such that *McDaniel* and *Bello* highlight through contrast why dismissing Defendant would be inappropriate. In *McDaniel*, the dismissed defendant was the plaintiff's peer. *McDaniel*, 2014 WL 4269126 at *4–5. The court explained that the allegations "portray an irritating, if not vindictive coworker, but they do not suggest that [the defendant] had any semblance of control over Plaintiff's employment opportunities." *Id.* at *5. In *Bello*, the plaintiff brought a suit in part because his employer did not permit time off for required military drills in addition to regular days off; instead, the employer encouraged him to schedule

his drills on his regular days off. *Bello*, 151 F. Supp. 3d at 853–55. The court concluded that, "[e]ven cast in the light most favorable to [the plaintiff], a reasonable jury could find only that [the individual defendant] was the first to question whether [the plaintiff's] practice of requesting military leave for drills in addition to nine [regular days off] each month was compliant with Village policy and that [the defendant] asked decision makers with the Village and the police department to weigh in." *Id.* at 859. Here, in contrast to the defendants in *McDaniel* and *Bello*, the complaint alleges that Defendant, as Chair of the Board, had some amount of control and influence over the decision to terminate Plaintiff's employment.[2]

In short, the Court takes the same cautious approach as the Seventh Circuit in *White*. Discovery may reveal that Defendant did not have any real influence over the decision to terminate Plaintiff's employment. However, the complaint alleges Defendant had "at least *some* control over" the decision to terminate Plaintiff's employment, and "for present purposes," these allegations are "enough to keep" Defendant in this case. *White*, 987 F.3d at 626. Accordingly, the Court declines to dismiss the complaint against Defendant Rabin.[3]

---

[2] Defendant mischaracterizes *McDaniel* as rejecting *Carter*. [See 22, at 2–4]. *McDaniel* explained that courts applied differing standards for determining when an individual is an employer under USERRA, but it explained that "[u]nder even *Carter*," the individual defendant was not an employer. Thus, far from rejecting *Carter*'s standard, *McDaniel* applied it.

[3] Defendant also argues that, as a volunteer, he is immune from liability under the Volunteer Protection Act ("VPA"), 42 U.S.C. § 14503. But, as Plaintiff notes, this immunity does not apply "to any misconduct that * * * involves misconduct for which the defendant has been found to have violated a Federal or State civil rights law." 42 U.S.C. § 14503(g)(1)(D). Defendant concedes "that USERRA falls under the purview of a civil rights law." [22, at 7]. Nevertheless, Defendant describes Plaintiff's VPA argument as "a non-starter" because Defendant "lacked the direct authority to hire or fire" Plaintiff. [*Id.*]. However, this argument amounts to stating that Defendant is immune from any USERRA claim because he cannot be held liable under USERRA. It does not adequately explain why VPA immunity extends to Plaintiff's civil rights claim.

**IV.     Conclusion**

For the reasons below, Defendant's motion to dismiss [18] is denied. Counsel are directed to file a joint status report no later than August 9, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

Dated: July 22, 2021

                                               Robert M. Dow, Jr.
                                               United States District Judge